People v Bostic (2023 NY Slip Op 03014)

People v Bostic

2023 NY Slip Op 03014

Decided on June 7, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 7, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
ROBERT J. MILLER
LARA J. GENOVESI
LILLIAN WAN, JJ.

2009-02531
 (Ind. No. 6797/07)

[*1]The People of the State of New York, respondent,
v
Dexter Bostic, appellant.

Twyla Carter, New York, NY (Arthur H. Hopkirk of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Keith Dolan, and Diane R. Eisner of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Plummer E. Lott, J.), rendered February 25, 2009, convicting him of aggravated murder, attempted aggravated murder, and criminal possession of a weapon in the second degree (three counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
On July 9, 2007, the defendant, acting in concert with two codefendants, shot police officers Russell Timoshenko and Herman Yan during a traffic stop. Officer Timoshenko died as a result of his injuries on July 14, 2007. On November 10, 2008, a joint trial commenced against the defendant and his two codefendants (see People v Ellis, 117 AD3d 843; People v Woods, 80 AD3d 718), but with three separate juries to deliberate on the charges against each of the three defendants.
The defendant's contention that the evidence was legally insufficient to support his conviction of attempted aggravated murder is unpreserved for appellate review (see CPL 470.05[2]; People v Hawkins, 11 NY3d 484, 492). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt of attempted aggravated murder beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490). Upon reviewing the record here, we are satisfied that the verdict of guilt as to the conviction of attempted aggravated murder was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
Contrary to the defendant's contention, with respect to the charge of aggravated murder, the Supreme Court properly denied his request to charge the jury on the lesser included offense of aggravated manslaughter in the first degree. "A party who seeks to have a lesser included crime charged to the jury must satisfy a two-pronged inquiry. First, the crime must be a lesser included offense within the meaning of Criminal Procedure Law § 1.20(37)" (People v Rivera, 23 NY3d 112, 120). Here, the defendant established the first prong. "Second, the party making the [*2]request for a charge-down 'must then show that there is a reasonable view of the evidence in the particular case that would support a finding that [the defendant] committed the lesser included offense but not the greater'" (id. at 120, quoting People v Glover, 57 NY2d 61, 63; see CPL 300.50[1]). "In assessing whether there is a 'reasonable view of the evidence,' the proof must be looked at 'in the light most favorable to [the] defendant'" (People v Rivera, 23 NY3d at 120-121, quoting People v Martin, 59 NY2d 704, 705; see People v Ranot, 194 AD3d 967, 968). Here, the evidence adduced at trial demonstrated that Officer Timoshenko was shot twice directly in the face while standing next to a vehicle in which the defendant and his codefendants were seated. Viewing the record in the light most favorable to the defendant, there was no reasonable view of the evidence to support a finding that the defendant intended to cause serious physical injury to Officer Timoshenko as opposed to death (see People v Moreno, 16 AD3d 438, 438; People v Wheeler, 257 AD2d 673, 673; cf. People v Cabassa, 79 NY2d 722, 728-730).
Contrary to the defendant's contention, the Supreme Court providently exercised its discretion in conducting a joint trial before separate juries rather than fully severing the defendant's trial from the trial of his codefendants (see generally People v Singletary, 164 AD3d 1477, 1478). "Severance motions are addressed to the sound discretion of the trial court" (People v Boylan, 193 AD3d 964, 965, citing People v Mahboubian, 74 NY2d 174, 183) "[A] strong public policy favors joinder, because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses" (People v Cardwell, 78 NY2d 996, 997 [internal quotation marks omitted]; see People v Ricardo B., 73 NY2d 228, 233). Thus, "[s]everance is compelled only where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger that the conflict alone would lead the jury to infer a defendant's guilt" (People v Boylan, 193 AD3d at 965 [internal quotation marks omitted]; see People v Warren, 20 NY3d 393, 397). Here, the various defenses amongst the defendant and his codefendants at trial were not in irreconcilable conflict (see People v Peisahkman, 29 AD3d 352, 352; cf. People v Feliciano, 189 AD3d 416, 417; People v Lessane, 142 AD3d 562, 564). Although the codefendants' respective counsel at times took adversarial stances against the defendant, they did not elicit any new evidence against the defendant that his jury would not otherwise have heard had he been granted a separate trial (cf. People v Cardwell, 78 NY2d at 998; People v Lessane, 142 AD3d at 564). Further, contrary to the defendant's contention, to the extent that the defendant's jury may have heard anything that it might not have heard at a separate trial, including cross-examination by counsel for his codefendants, this did not deprive him of a fair trial under the circumstances (see People v Bruno, 111 AD3d 488, 489).
The defendant failed to preserve for appellate review his contention that the Supreme Court was required to hold a Frye hearing (see Frye v United States, 293 F 1013 [DC Cir]) before allowing the People's ballistics comparisons expert to testify at trial (see CPL 470.05[2]; see generally People v Diaz, 189 AD3d 1063, 1066). In any event, the purported error was harmless under the standard that applies to nonconstitutional errors, because the evidence of the defendant's guilt, without reference to the purported error, was overwhelming, and there was no significant probability that the jury would have acquitted him had it not been for the purported error (see People v Williams, 35 NY3d 24, 42-43).
The defendant also failed to preserve for appellate review his contention that the testimony of the ballistics comparisons expert lacked a proper foundation. In any event, the People established that "accepted methods were appropriately employed in" this case (Parker v Mobil Oil Corp., 7 NY3d 434, 447; see People v Wesley, 83 NY2d 417, 428-429), and any weaknesses in the "testimony went to credibility and the weight of the evidence rather than to its admissibility" (People v Nelson, 186 AD3d 1404, 1406, citing People v Jackson, 125 AD3d 1002, 1004).
"[C]ertain deviations from mandated procedural, structural and process-oriented standards affect 'the organization of the court or the mode of proceedings prescribed by law' and present a question of law even without a timely objection" (People v Agramonte, 87 NY2d 765, 769-770, quoting People v Patterson, 39 NY2d 288, 295). "Only fundamental defects in judicial proceedings, however, fall within this very narrow category of so-called 'mode of proceedings' errors" (People v Agramonte, 87 NY2d at 770). "Mode of proceedings errors are immune not only from the rules governing preservation and waiver but also from harmless error analysis" (People v [*3]Mack, 27 NY3d 534, 540).
CPL 270.35(1) provides, among other things, that if the court discharges a juror and the "discharged juror was the foreperson, the court shall designate as the new foreperson the juror whose name was second drawn and called." Here, the Supreme Court erred by allowing the jury to designate its own replacement foreperson in contravention of the statutory procedure prescribed in CPL 270.35(1). However, the error was not a mode of proceedings error (see People v Lee, 129 AD3d 1295, 1298-1299; People v Alexander, 104 AD3d 1221, 1222). Defense counsel failed to preserve for appellate review his objection to the procedure employed (see People v Arevalo, 168 AD3d 1091, 1091; People v Driver, 154 AD3d 958, 959). In any event, the error was harmless (see People v Burgess, 280 AD2d 264, 265).
The defendant's remaining contention, that the trial court improperly curtailed his cross-examination of certain prosecution witnesses, is without merit.
BARROS, J.P., MILLER, GENOVESI and WAN, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court